AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
District of Delaware

In the Matter of the Search of  )
*(Briefly describe the property to be searched*  )
*or identify the person by name and address)*  )   Case No. 22- 285m
a RED APPLE IPHONE 11 AND BLACK APPLE IPHONE XR,  )
LOCATED AT 3601 NORTH DUPONT HIGHWAY, NEW CASTLE, DE  )
19720  )

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
See Attachment A.

located in the _____ District of _____Delaware_____, there is now concealed *(identify the person or describe the property to be seized):*
See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §1343 | Wire Fraud |

FILED

SEP 7 2022

U.S. DISTRICT COURT DISTRICT OF DELAWARE

The application is based on these facts:
See attached Affidavit.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *) is requested under*
18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/s/ Marissa Favata
*Applicant's signature*

Marissa Favata, Special Agent, ATF
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____telephone_____ *(specify reliable electronic means).*

Date: 09/07/2022

*Judge's signature*

City and state: Wilmington, DE       Mary Pat Thynge, Chief U.S. Magistrate Judge
*Printed name and title*

Confirmed signature
and identity of
applicant via 9/7/22

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF RED APPLE IPHONE 11 AND BLACK APPLE IPHONE XR, CURRENTLY LOCATED AT 3601 NORTH DUPONT HIGHWAY, NEW CASTLE, DE 19720 | Case No. 22-285M |

**AFFIDAVIT IN SUPPORT OF AN
APPLICATION UNDER RULE 41 FOR A
WARRANT TO SEARCH AND SEIZE**

I, Marissa Favata, Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—two electronic devices—which are currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant.

3. I have been a Special Agent with ATF since August 2019. I am currently assigned to the ATF Baltimore Field Division, Wilmington Field Office. I have a Bachelor's Degree in Science majoring in Health Education with a concentration in Community Outreach from East Stroudsburg University and a Master's Degree in Science majoring in Management from the Johns Hopkins University Public Safety Leadership Program. In October 2018, I attended the Department of Homeland Security's Criminal Investigator Training Program and

the ATF's Special Agent Basic training at the Federal Law Enforcement Training Center for a combined total of 26 weeks. I received extensive training in the provisions of firearms and narcotics laws administered under Title 18, Title 21, and Title 26 of the United States Code. I also received training specific to explosives including device recognition and reconstruction, conducting explosives investigations, characteristics of explosive products, identification of precursors used to make homemade explosives, and more. Since 2019, I have been involved in numerous investigations into criminal activity such as illegal firearms trafficking, possession of firearms by prohibited persons, use of a firearm in furtherance of a crime of violence or drug trafficking crime, Hobbs Act robbery, and possession with intent to distribute and distribution of controlled substances. Additionally, I have assisted with numerous investigations regarding violations of federal law involving explosive devices.

4. I have conducted and assisted in several investigations involving the illegal possession of firearms, federal controlled substance laws, and the commission of violent crimes. I have received training and participated in various types of investigative activities including, but not limited to: (a) physical surveillance; (b) debriefing defendants, witnesses, informants, and other individuals who had knowledge of firearms and controlled substances; (c) the execution of search warrants; (d) the consensual monitoring and recording of conversations; and (e) handling and maintaining evidence.

5. The government is investigating Dawine Harmon ("HARMON") for violations of Title 18, United States Code, Section 1343 (Wire Fraud) relating to his alleged fraudulent participation in certain COVID-19 benefit programs. This investigation stems from an investigation into HARMON for firearms-related offenses.

2

6. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

### IDENTIFICATION OF THE DEVICE TO BE EXAMINED

7. The property to be searched is a Red Apple iPhone 11 and a Black Apple iPhone XR, hereinafter the "Devices." The Devices are currently located at the New Castle County Police Department, 3601 North DuPont Highway, New Castle, DE 19720.

8. The applied-for warrant would authorize the forensic examination of the Devices for the purpose of identifying electronically stored data, particularly described in Attachment B.

### PROBABLE CAUSE

9. On November 4, 2020, a shooting took place in New Castle, Delaware. Two individuals, one adult and one juvenile, were injured. A shell casing found at the scene led to a preliminary DNA match to HARMON. Based on this, New Castle County Police Department ("NCCPD") obtained a search warrant for HARMON's residence on November 17, 2020. The search occurred two days later, on November 19. During the search, officers discovered one of the firearms used in the November 4, 2020 shooting. HARMON is a convicted felon and thus prohibited from possessing a firearm.

10. HARMON was interviewed the same day, November 19, and law enforcement learned that he was out of state at the time of the shooting. Thus, he could not have physically been involved. HARMON would not, however, tell officers how and from whom he received the firearm after returning to Delaware.

11. On or about November 24, 2020, NCCPD obtained a search warrant for the Devices as part of the ongoing investigation into the shooting incident. Part of the basis for the warrant was the potential that the phones would contain evidence of who HARMON

3

communicated with about the firearm, and thus potentially identify those involved in the shooting. The warrant authorized review of the phones from September 24, 2020 through November 19, 2020.

12.     On or about December 4, 2020, ATF began reviewing the case for potential charges under 18 U.S.C. § 922(g) (felon in possession of a firearm).[1] As part of the federal investigation, I received a copy of the phone extractions obtained pursuant to the state search warrants, and reviewed the same between March and April 2022.

13.     During this review, I came across two messages that indicated HARMON was involved in fraud related to the COVID-19 pandemic. As a result of the pandemic, the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") was signed into law on March 27, 2020. The CARES Act created the Pandemic Unemployment Assistance ("PUA") program, which provides unemployment benefits to individuals not eligible for regular unemployment compensation or extended unemployment benefits.[2] These benefits are designed for individuals who are unemployed for reasons related to the COVID-19 pandemic. According to various state departments of labor, an applicant should file their claim with the state where they last worked. If the applicant worked in a state other than the one where they currently live, or if they worked in multiple states, the administrative agency where the applicant currently lives

---

[1] Harmon was charged via Indictment on February 11, 2021 with one count of violating 18 U.S.C. § 922(g). Crim. Action No. 21-05-RGA.

[2] UNITED STATES DEPARTMENT OF LABOR, *Unemployment Insurance Relief During COVID-19 Outbreak*, https://www.dol.gov/coronavirus/unemployment-insurance (last accessed Sept. 6, 2022).

4

can provide information about how to file their claim with other states. In all instances, however, an individual can only be eligible for, and receive, benefits in one state.

14. On October 2, 2020, HARMON wrote a text message in a group chat stating that he is "doing" the Maryland PUA because he "ain't never too good for free money." The government sought records from the Maryland Department of Labor, but it appears HARMON did not actually apply for PUA benefits. On October 14, 2020, however, an individual sent a link to HARMON via text message. The link was to a page discussing Guam's PUA benefits. HARMON replied, "I did that jawn last week." The government obtained records from the Guam Department of Labor and confirmed that HARMON submitted a PUA application on or about October 9, 2020, as did his then-girlfriend. Based on my investigation of HARMON, he has never lived or worked in Guam and thus was not eligible to apply for PUA benefits.

15. Based on the above, there is probable cause to believe that HARMON unlawfully applied for PUA benefits and that additional messages from earlier in 2020 will provide further evidence of said activity, including the identification of other participants and other states.

16. The Devices are currently in the lawful possession of NCCPD at 3601 North DuPont Highway, New Castle, DE 19720. The state warrants, however, only authorized seizure of information from September 24, 2020 through November 19, 2020. Therefore, I seek this additional warrant in order to lawfully expand the timeframe in which the government may seize information as it relates to an investigation into potential COVID-related fraud.

## TECHNICAL TERMS

17. Based on my training and experience, I use the following technical terms to convey the following meanings:

a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For

        example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

    e. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

    f. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

18. Based on my training, experience, and research, I know that the Devices have capabilities that allow them serve as a wireless telephone, digital camera, PDA, portable media player, and that allow it to access the Internet. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests the existence of and scope of criminal activity, including those involved in criminal activity.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

19. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

20. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how

7

the Devices were used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Devices because:

    a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

    b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

    c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

    d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

    e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

21. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

22. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve

8

the physical intrusion onto a premises. Consequently, I submit there is good cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

23. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Devices described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

/s/ Marissa Favata
Marissa L. Favata
Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

Sworn to me over the telephone and signed by me pursuant to
Fed. R. Crim. P. 4.1 on this ___7th___ day of September, 2022.

_____
HONORABLE MARY PAT THYNGE
CHIEF UNITED STATES MAGISTRATE JUDGE

9

## ATTACHMENT A

The property to be searched is a Red Apple iPhone 11 and a Black Apple iPhone XR, hereinafter the "Devices." The Devices are currently located at 3601 North DuPont Highway, New Castle, DE 19720.

This warrant authorizes the forensic examination of the Devices for the purpose of identifying the electronically stored information described in Attachment B.

## **ATTACHMENT B**

1.  All records on the Devices described in Attachment A that relate to violations of Title 18, United States Code, Section 1343 (Wire Fraud), as it relates to fraudulent activity regarding CARES Act programs, involving Dawine Harmon, from March 1, 2020 through November 19, 2020, including:

    a. Records and information related to CARES Act programs, including Pandemic Unemployment Assistance ("PUA");

    b. Text messages and media related to CARES Act programs, including PUA;

    c. Identification of individuals involved in the unlawful participation of CARES Act programs, including PUA;

    d. Records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, internet protocol addresses, and records of user-typed web addresses.

2.  Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.